Filed this ___5___ day of December, 2017
_Daniel S. Tucek_ Clerk of Court
_____ Deputy Clerk

W. SCOTT GREEN
DANIEL L. SNEDIGAR
PATTEN, PETERMAN, BEKKEDAHL & GREEN, P.L.L.C.
2817 Second Avenue North, Suite 300
Billings, MT 59101
Telephone: (406) 252-8500
Facsimile: (406) 294-9500
E-mail: sgreen@ppbglaw.com
         dsnedigar@ppbglaw.com

*Attorneys for Plaintiffs Zimmerman Ag*
*& Cattle Company and Randy Nunn*

MONTANA TENTH JUDICIAL DISTRICT COURT, PETROLEUM COUNTY

| | |
|---|---|
| ZIMMERMAN AG & CATTLE COMPANY, LLC, and RANDY NUNN, <br><br> Plaintiffs, <br><br> vs. <br><br> NAU COUNTRY INSURANCE COMPANY, <br><br> Defendant. | CAUSE NO. DV 2017-12 <br><br> JUDGE JON A. OLDENBURG <br><br> **COMPLAINT AND REQUEST FOR JURY TRIAL** |

Plaintiffs, ZIMMERMAN AG & CATTLE COMPANY, LLC, and RANDY NUNN, by and through counsel, allege the following for their Complaint:

**PARTIES**

1. Plaintiff Zimmerman Ag & Cattle Company, LLC ("Zimmerman") is a Minnesota Limited Liability Company, registered to do business in Montana, with a principal place of business in Petroleum County, Montana.

1

2. Plaintiff Randy Nunn is a resident of Petroleum County, Montana.

3. By belief and information, defendant NAU Country Insurance Company ("NAU") is a Minnesota company with its primary business address in Sun Prairie, Wisconsin.

## JURISDICTION

4. The events relevant to this claim occurred in, and the property that was insured by the Defendant, are in Petroleum County, Montana.

## FACTUAL BACKGROUND

5. On July 10, 2017, Zimmerman purchased a crop hail policy, numbered MT-389-1033036 (the "policy"), for wheat he was growing in Petroleum County, Montana.

6. On that date, Zimmerman was growing spring wheat both on land he owned, and on land leased under an agreement with Randy Nunn.

7. Under the agreement with Nunn, expenses and inputs were to be deducted, and Zimmerman was to receive two-thirds of the profits for wheat grown on the leased ground, and Nunn was to receive one-third.

8. Nunn applied for and received their own crop insurance for their one-third share of the same wheat crop, under a policy numbered MT-389-1033158-17.

9. Zimmerman was supplied with a copy of the Schedule of Insurance for its policy, a true and correct copy of which is attached to this Complaint as Exhibit "1".

10. As listed on this Schedule of Insurance, the policy had an effective date of "07/10/2017 03:00 PM."

11. Zimmerman's Schedule of Insurance lists the covered tracts of land.

12. Zimmerman's Schedule of Insurance notes that the covered crop is "WHEAT".

13. Zimmerman's Schedule of Insurance denotes under the heading "Ins/Acre" that there is $400.00 per acre of coverage.

14. Nunn was supplied with a copy of the Schedule of Insurance for his own policy, a true and correct copy of which is attached to this Complaint as Exhibit "2".

15. As listed on this Schedule of Insurance, the policy had an effective date of "07/10/2017 3:24 PM."

16. Nunn's Schedule of Insurance lists the covered tracts of land where Zimmerman was farming under the lease agreement.

17. Nunn's Schedule of Insurance notes that the covered crop is "WHEAT".

18. Nunn's Schedule of Insurance denotes under the heading "Ins/Acre" that there is $166.00 per acre of coverage.

19. NAU did not send any agents or employees to assess the value of the wheat crop on or around the day the policy issued, at either Zimmerman's owned ground, or at the land leased from Nunn.

20. On July 16, 2017, Zimmerman's wheat crops on both its owned and leased land received hail damage.

21. Zimmerman reported the hail damage and filed a "Notice of Loss" on July 19, 2017.

22. Zimmerman reported the hail damage on his owned and leased land from the July 16, 2017 storm within 10 days of the storm.

23. The hail damage Zimmerman reported included damage to wheat that Nunn had a one-third interest in.

3

24. NAU representatives contacted Zimmerman on July 21, 2017 to arrange an appointment to assess the crop damage.

25. At that time, Zimmerman reported to NAU that there were fires in the area, and requested permission to harvest the remaining damaged wheat, leaving unharvested "sample strips" to be used for adjustment.

26. Zimmerman received permission to harvest the wheat and leave "sample strips" for adjustment.

27. Zimmerman harvested the wheat on the insured tracts between July 21, 2017 and August 7, 2017, as different tracts of the wheat matured and were ready for harvest, and with some interruptions due to mechanical issues with harvesting equipment.

28. Zimmerman did, in fact, leave representative "sample strips" for adjustment of his claim.

29. Zimmerman requested, and was granted, permission by representatives of NAU to "work" the ground on the land leased from Nunn, preserving the "sample strips" for adjustment.

30. On August 1, 2017, the remaining crops and harvested areas, including the sample strips, were subjected to another hailstorm.

31. On August 8, 2017, Nunn submitted his claim for the July 16, 2017 hail damage.

32. This damage had already been reported by Zimmerman as part of his insurance claim for his share of those crops.

33. NAU adjusters did not visit the crops subject to the claim until August 8, 2017.

34. When the adjusters visited on August 8, 2017, Greg Zimmerman, of Zimmerman Ag, informed the adjusters that the acreage noted in "Line 002" of the Schedule of Insurance was incorrect, and should have been reduced because not all acreage was planted in wheat.

35. Other representatives of NAU examined the crops on August 16, 2017, one month after the crops were damaged.

36. On September 25, 2017, NAU issued to Zimmerman a letter denying coverage for the hail damage on the crop. A true and correct copy of the letter is attached as Exhibit "3".

37. No one from NAU appraised Zimmerman's insured crops as of the date of policy issuance.

38. In the denial letter to Zimmerman, NAU unilaterally "adjusted" the pre-damage value of Zimmerman's wheat crop downwards.

39. Without providing any evidence, NAU stated that the crops on the Nunn leased land had suffered "excessive wildlife damage."

40. NAU's letter admits that "weather data . . . shows a hail storm occurred in the area on the date reported by you on the notice of potential loss."

41. NAU alleges that Zimmerman had harvested his fields before they were damaged by hail.

42. At the request of NAU, Zimmerman submitted a cell-phone video taken by the Nunn's that shows a hailstorm on July 16, 2017.

43. At the request of NAU, Zimmerman submitted a signed statement from CHS agronomist Ryan Hansen that stated he had seen hail damaged crops in Zimmerman's owned and

5

leased fields on July 26, 2017. A true and correct copy of this statement is attached as Exhibit "4".

44. Zimmerman has provided NAU with all requested information related to its claim under the policy.

45. By belief and information, NAU paid, without dispute, other hail claims from the July 16, 2017 storm for crops on land in the immediate area of the Zimmerman crops.

46. Also on September 25, 2017, NAU issued to Nunn a letter denying coverage for his share of the hail damage on the crop. A true and correct copy of the letter is attached as Exhibit "5".

47. No one from NAU appraised the crops on the leased land as of the date of policy issuance.

48. In the denial letter to Nunn, NAU unilaterally "adjusted" the pre-damage value of Zimmerman's wheat crop downwards.

49. Without providing any evidence, NAU stated that the crops on the land leased by Nunn had suffered "excessive wildlife damage."

50. NAU's letter admits that "weather data . . . shows a hail storm occurred in the area on the date reported by you on the notice of potential loss."

51. NAU was provided with a video taken by Nunn on July 16, 2017 that shows hail on their property.

52. In spite of this video, NAU states that there was no hail damage to the crop on the land leased to Zimmerman.

## COUNT I: BREACH OF CONTRACT

53. The Plaintiffs incorporate into Count I by reference all allegations contained in paragraphs 1 through 52 as if fully set forth herein.

54. The insurance policies purchased by Zimmerman and Nunn were contracts.

55. NAU was obligated to pay certain amounts upon the occurrence of certain events, specifically, to insure Zimmerman and Nunn's wheat crops from hail.

56. NAU has breached the contract by unilaterally changing the amount of indemnification on the policies without a contemporary appraisal, evidence, or justification.

57. NAU has further breached the contract by failing to pay for crops damaged by hail.

58. Both Zimmerman and Nunn have suffered substantial direct financial losses due to NAU's breach of contract.

59. Both Zimmerman and Nunn have suffered consequential damages as a direct result of NAU's breach of contract.

## COUNT II: DECLARATORY JUDGMENT

60. The Plaintiffs incorporate into Count II by reference all allegations contained in paragraphs 1 through 59 as if fully set forth herein.

61. Under the provisions of § 27-8-202, MCA:

Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

62. The Plaintiffs in this matter are persons interested under a written contract.

7

63.     The Plaintiffs are entitled to obtain "a declaration of rights, status, or other legal relations thereunder."

64.     Here, the defendant, NAU, unilaterally and without evidence or justification modified terms of the contract after it had been entered.

65.     The Plaintiffs are entitled to declaratory judgment regarding the terms of their contract and the amount of indemnification.

66.     Under the provisions of § 27-8-313, MCA:

Further relief based on declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by a declaratory judgment or decree to show cause why further relief should not be granted forthwith.

67.     The Plaintiffs are entitled to their reasonable attorneys' fees and costs under the provisions of § 27-8-313, MCA.

## COUNT III: UNFAIR TRADE PRACTICES AND PUNITIVE DAMAGES

68.     The Plaintiffs incorporate into Count III by reference all allegations contained in paragraphs 1 through 67 as if fully set forth herein.

69.     NAU, in refusing to honor the insurance policies sold to the Plaintiffs, and in unilaterally and without evidence or justification altering the terms of the contract, has violated § 33-18-201, MCA prohibiting unfair or deceptive acts or practices in the conduct of any trade or commerce.

70.     NAU failed to good faith effectuate a settlement.

71.     NAU failed to promptly settle claims when liability is reasonably clear.

72. Because of NAU's unfair settlement procedures and practices, the Plaintiffs have suffered financial damages.

WHEREFORE, the Plaintiffs pray for the following relief:

1. For damages for breach of contract in an amount to be determined at trial.

2. For a declaration that the Plaintiffs are entitled to the full contract value of the insurance they purchased.

3. For judgment for punitive damages under § 27-1-221, MCA and § 33-18-241, MCA.

4. For an award of the Plaintiffs' attorneys' fees and costs

5. For any other relief as the Court deems just and proper.

Plaintiffs request a jury trial in this matter

DATED this ___21___ day of December, 2017.

> PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC
> 2817 Second Avenue North, Suite 300
> Billings, Montana 59101
>
> By: _____
> W. SCOTT GREEN
> DANIEL L. SNEDIGAR
> *Attorneys for Plaintiffs Zimmerman Ag & Cattle Company and Randy Nunn*

9

CROP-HAIL, GRAIN FIRE AND
NAMED PERIL COVERAGE OF INSURANCE

 QBE NAU

Schedule of Insurance  Created: 07/19/2017

| Insured Information | Crop Year: 2017 | Agency/Agent Information | Policy #: MT-389-1033036-17 |
|---|---|---|---|
| ZIMMERMAN AG & CATTLE COMPANY LLC<br>14044 HWY 200<br>WINNETT, MT 59087 | State 30-Montana<br>County 069-Petroleum | Agency Code 95-0301<br>Agent: REISIG, DUSTIN<br>REISIG AGENCY - LEWISTOWN<br>619 NE MAIN<br>LEWISTOWN, MT 59457 | Fergus Farm Mutual<br>Northwest Branch Office<br>3301 GR. NORTHERN AVE, SUITE #301<br>MISSOULA, MT 59808<br>Phone: (866)942-7672<br>Fax: (406)549-2642 |
| ID No. **-***-3936 | | | |
| Spouse<br>ID No.<br>Contact<br>P: (406)380-0907 | | Phone (406)538-5731    Fax (406)538-6825 | CSR KLAPLAUNT |

Loss Payable to Me and                                                                                      Policy Effective Date: 07/10/2017 03:00 PM

The premium for each growing season will be calculated on the basis of the rates in effect for such season for the limit of insurance in effect.

Access Your Hail Provisions online at www.naucountry.com/provisions                       Effective Date: 07/10/2017 03:00 PM

| Line | Unit # | Cty | Qtr | Sec | Twp-Rng | FSN | Tract | Crop | Pract | Policy Form | Acres | Int | Ins/Acre | Ins Limit | Rate | Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 001 | | 069 | | 20* | 018N025E | | | WHEAT | | DDA | 400.00 | 1.0000 | $400.00 | $160,000.00 | 7.05 | $11,280.0 |
| 002 | | 069 | | 29* | 018N025E | | | WHEAT | | DDA | 440.90 | 1.0000 | $400.00 | $176,360.00 | 7.05 | $12,433.0 |
| 003 | | 069 | | 1* | 014N027E | | | WHEAT | | DDA | 342.30 | 1.0000 | $400.00 | $136,920.00 | 10.55 | $14,445.0 |
| 004 | | 069 | | 34* | 015N027E | | | WHEAT | | DDA | 313.40 | 1.0000 | $400.00 | $125,360.00 | 12.45 | $15,607.0 |

CROPS COVERED UNDER THIS CONTRACT ARE:

| CROP | COUNTY | PRACTICE | POLICY FORM | % OF PRICE | HAIL TYPE | ACRES | GROSS LIABILITY | *NET PREMIUM | CASH DISCOUNT | **CASH PREMIUM |
|---|---|---|---|---|---|---|---|---|---|---|
| WHEAT | Petroleum | | DDA | | Hail | 1,496.60 | $598,640.00 | $53,765.00 | $2,151.00 | $51,614.00 |
| | | | | | | | $598,640.00 | $53,765.00 $53,765.00 | $2,151.00 | $51,614.00 |

**Premium Balance if paid by Cash Due Date (08/15/2017): $51,614.00
*Premium Balance if paid by Standard Due Date (10/01/2017): $53,765.00



THIS IS NOT A BILL

2017.01 NPSI N    *Additional Legals        ZIMMERMAN AG & CATTLE COMPANY LLC        2017        Bulk   Page 1 of 1

# QBE NAU

**CROP-HAIL, GRAIN FIRE AND NAMED PERIL COVERAGE OF INSURANCE**

Schedule of Insurance

Created: 07/28/2017

| Insured Information | Agency/Agent Information | Policy #: MT-389-1033158-17 |
|---|---|---|
| RANDY NUNN<br>1223 DEHANY<br>WINNETT, MT 59087 | Agency Code 95-0301<br>Agent: REISIG, DUSTIN<br>REISIG AGENCY - LEWISTOWN<br>619 NE MAIN<br>LEWISTOWN, MT 59457 | Fergus Farm Mutual<br>Northwest Branch Office<br>3301 GR. NORTHERN AVE, SUITE #301<br>MISSOULA, MT 59808<br>Phone: (866)942-7672<br>Fax: (406)549-2642 |
| Crop Year: 2017<br>State 30-Montana<br>County 069-Petroleum | | |
| ID No. ***-**-4896 | | |
| Spouse | | |
| ID No. | Phone   Fax<br>(406)538-5731   (406)538-6825 | CSR  KLAPLAUNT |
| Contact<br>P: (406)429-2132 | | |

Loss Payable to Me and

The premium for each growing season will be calculated on the basis of the rates in effect for such season for the limit of insurance in effect.

Policy Effective Date: 07/10/2017 03:24 PM

Access Your Hail Provisions online at www.naucountry.com/provisions

Effective Date: 07/10/2017 03:24 PM

| Line | Unit # | Cty | Qtr | Sec | Twp-Rng | FSN | Tract | Crop | % OF PRICE | HAIL TYPE | ACRES | LIABILITY | Pract | Policy Form | Acres | Int | Ins/ Acre | Ins Limit | Rate | Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 001 | | 069 | | 30* | 018N025E | | | WHEAT | | Hail | 440.00 | $73,040.00 | | DDA | 440.00 | 0.3330 | $166.00 | $73,040.00 | 7.05 | $5,149.00 |

**CROPS COVERED UNDER THIS CONTRACT ARE:**

| CROP | COUNTY | PRACTICE | POLICY FORM | GROSS PREMIUM | *NET PREMIUM | CASH DISCOUNT | **CASH PREMIUM |
|---|---|---|---|---|---|---|---|
| WHEAT | Petroleum | | DDA | $5,149.00 | $5,149.00 | $206.00 | $4,943.00 |
| | | | | $5,149.00 | $5,149.00 | $206.00 | $4,943.00 |

**Premium Balance if paid by Cash Due Date (08/15/2017): $4,943.00
*Premium Balance if paid by Standard Due Date (10/01/2017): $5,149.00

THIS IS NOT A BILL

NUNN, RANDY


EXHIBIT 2

* Additional Legals

2017.01.NPSI.N   Bulk   2017   Page 1 of 1

September 25, 2017

NAU Country Insurance Company

Northwest Branch Office
3301 Great Northern Ave, Suite 301
Missoula, MT 59808
Phone: 406.214.3525
Toll Free: 866.942.7672
Fax: 406.549.2642
naucountry.com

NAU Country Insurance Company
is an Equal Opportunity Provider

Zimmerman Ag & Cattle Company LLC
14044 Hwy 200
Winnett, MT 59087

RE:             Crop Hail Policy MT-389-1033036-17
County/Crop:    Petroleum County, Montana - Wheat

Mr. Zimmerman:

Zimmerman Ag & Cattle LLC submitted a crop hail application on July 10, 2017. You were issued the attached Coverage of Insurance that informed you where you could access your policy provisions on the company website where the document was available to you at all times. A complete copy of the crop hail insurance contract is attached.

We received your Notice of Loss dated July 19, 2017, for a hail event on July 16, 2017, on the above-referenced policy. Upon receiving your notice of potential loss, our claim staff contacted you on July 21, 2017, to arrange an appointment at which time you stated there was a fire in the area. You requested permission to keep combining due to the fire and we granted consent to leave unharvested sample strips to be used for the hail adjustment once harvest was complete.

Applicable portions of the General Provisions state:

   Section 3a – Your Duties:

      (2) Your Duties: Continue to care for each damaged field of insured crop until we have examined the field; provided, however, that with our written consent, you may preserve representative samples in each damaged field of insured crop.

      (3): Your Duties: you are to allow us to examine the damaged crop as often as we reasonably require.

      (4): Upon our request, provide a complete harvesting and marketing record of each insured crop.

      (5): Upon our request, submit to an examination under oath.

      (6): Sign a Withdrawal of Claim when our inspection of the crop determines that there is no payable loss under the terms of this policy.

   Section 4a: The amount payable per acre will be the limit of insurance applying on the date of the loss multiplied by the percentage of loss. However, the amount


EXHIBIT 3

Zimmerman Ag & Cattle Company LLC
September 25, 2017
Page Two

   payable may not exceed the actual cash value as determined at the time of the application of the portion of the crop destroyed by perils insured against.

   Section 14 outlines various exclusions to coverage, including loss caused by a peril not insured against.

   Section 16 provides that you cannot bring suit against us unless you have complied with all of the policy provisions.

We did grant you consent to leave representative sample strips, however, by the time you allowed us access to the fields, the fields up north had already been plowed/worked not allowing our adjusters to visually inspect these fields as a whole. They observed during the field inspection that the remaining strips suffered from excessive wildlife damage. According to Section 1 of the Crop Hail Special Provisions for Montana, wildlife damage is not a covered peril.

When questioned by NAU Claim representatives you were originally unable to identify exact harvest dates by field. As noted above, you must provide a complete harvesting and marketing record for each insured crop upon our request. Multiple attempts were made to determine harvest dates with your cooperation and while inspecting samples of the crop on August 8th you told our adjusters that you finished harvesting the prior day, on August 7th. According to conversations with your field expert Ryan, and a ledger he provided, he was with you on the combine completing harvest on July 26th.

On the attached Application and Coverage of Insurance you will see that you reported 100% interest in all acres reported for insurance and requested insurance coverage of $400.00 per acre subject to the terms of the insurance contract. We have since learned that you own 2/3 interest in the second line item on the policy (440.90 acres) and that Randy Nunn owns the other 1/3 share under a lease agreement. Mr. Nunn also has a crop hail policy and did report his 1/3 interest in the 440.90 acres for coverage so your share on that line item is being reduced from 100% to 2/3 of 100% and the other 1/3 will remain on Mr. Nunn's policy. We also discovered that of the 440.9 acres reported as wheat only 310.9 acres was actually planted to wheat and the remaining 130.0 acres was planted to corn and safflowers. The acres are also being adjusted on both wheat hail policies to 310.9 acres.

The amount payable per acre IS the limit of insurance applying on the date of the loss multiplied by the percentage of loss; however, the amount payable may not exceed the actual cash value as determined at the time of the application of the portion of the crop destroyed by perils insured against. We have considered the actual value of the insured crop and contracted the local elevator you do business with to obtain the wheat price as of the date of your application for coverage. Per our field appraisals, the local market price at time of application, and visual field inspections, we have concluded the total liability per acre must be reduced from $400.00 per acre to the following amounts:

   Line 1:   $175.00 per acre  (400.0 acres of CC Spring Wheat)

Zimmerman Ag & Cattle Company LLC
September 25, 2017
Page Three

| | | |
|---|---|---|
| Line 2: | $74.00 per acre | (310.9 acres of CC Spring Wheat) |
| Line 3: | $209.00 per acre | (342.3 acres of CC Spring Wheat) |
| Line 4: | $175.00 per acre | (313.4 acres of CC Spring Wheat) |

Weather data we obtained shows three separate hail storms in the area. The first was on July 10, 2017, the second on July 16, 2017, and the third was on August 1, 2017. The attached hail storm images show the track and severity of the hail storm and you can see the location of the Zimmerman farming operation outlined in white. The image from July 10, 2017, shows no hail over the Zimmerman farming operation, the image from July 16, 2017, shows a hail storm occurred in the area on the date reported by you on the notice of potential loss but the hail track did not go over any portion of the Zimmerman farming operation. The image from August 1, 2017, does show that a hail storm on that date did go over the southern acreage of the Zimmerman farming operation.

The weather data from neighboring fields which are also insured by NAU shows the same hail storms in the area on July 16, 2017 and August 1, 2017. Those neighboring fields did not have a notice of loss turned in for the July 16th storm. A notice of loss was turned in for the August 1st storm.

Zimmerman Ag & Cattle has acreage that we refer to as the North and other acreage that is some distance away that we refer to as South. The attached satellite imagery of the Zimmerman farming operation shows the progression of harvest of the Zimmerman wheat acreage. The images for the South acreage show that harvest commenced on July 21, 2017, and finished on July 28, 2017. The images for the North acreage show that harvest commenced on July 13, 2017, and ended on August 3, 2017. We refer you back to the hail storm images that show that there was hail in the area, but the actual track of the July 16, 2017, storm missed both the North and South acreage blocks. The August 1, 2017, storm image shows the hail storm in the area and that the track of that storm missed the North acreage but did impact the South acreage however, as stated above, the satellite imagery we provided shows that harvest of the South acreage had already been completed on July 28, 2017.

The evidence we have at this time along with the information we compiled from your field representative sample strips, suggests that your crop was harvested prior to any of the fields being affected by hail. This is also supported by our visual inspection of the strips which showed evidence of severe damage which was not evident in the surrounding stubble. This letter serves as notification to you that based on our investigation into the timeline of events, the satellite imagery and weather data, and the evidence in the field inspections we conducted we are denying any indemnification to the Petroleum County wheat acreage under the above 2017 Crop Hail policy and there is no payable loss.

The reasons for denial are based upon what is known to us at this time. According to Section 12. of the Crop Hail General Provisions, "We do not provide coverage for any insured who has intentionally concealed or misrepresented any material fact or circumstance relating to

Zimmerman Ag & Cattle Company LLC
September 25, 2017
Page Four

the insurance, either before or after the loss." We reserve the right to adjust any findings based upon any additional information that we discover or that you provide.

Sincerely,

NAU Country Insurance Company

By: Anthony Schmode
VP Regional Claims - Crop

Enclosures

cc:   Mark Masters – Branch Manager
      Reisig Agency – Lewistown
      file

## Affidavit of Ryan Hansen

STATE OF MONTANA

COUNTY OF FERGUS

The undersigned, Ryan Hansen, being duly sworn, hereby deposes and says:

1. I am over the age of 18 and am a resident of the State of Montana. I have personal knowledge of the facts herein, and, if called as a witness, could testify completely thereto.

2. Suffer no legal disabilities and have personal knowledge of the facts set forth below.

3. I was at Greg Zimmerman's farm on July 26th, 2017. I made the plan to come out to see him that day because I knew he was combining and had heard him and Randy Nunn both caught hail earlier in the month. I rode with Greg and his daughter in the combine while he harvested the field to the south of his house. While riding in the combine I could observe many broken heads "hangers" in the field. I remember noting this and talking about it with Greg. After making a few rounds we took his UTV up to his wheat fields north of the highway to look at the check strips he had left. I noticed the same damage in the strips, hangers and shelling out, as there was in the field south of his house. I had mentioned it was a shame to see the wheat like this because his and Randy's wheat was some of the first spring wheat planted in the country that I knew of and was looking really good all season until that storm and then the lack of moisture from there took its toll. I was also able to see the spring wheat up by Randy's home earlier that day when I rode with Randy to look at his peas, safflower, hay barley and corn. I noticed similar damage to the spring wheat in those fields as well.

I declare that, to the best of my knowledge and belief, the information herein is true, correct, and complete.

Executed this 7th day of September, 2017.

_____
Ryan Hansen
Certified Crop Advisor and Agronomist

EXHIBIT 4

September 25, 2017

NAU Country Insurance Company

Northwest Branch Office
3301 Great Northern Ave, Suite 301
Missoula, MT 59808
Phone: 406.214.3525
Toll Free: 866.942.7672
Fax: 406.549.2642
naucountry.com

Randy Nunn
1223 Dehany
Winnett, MT 59087

NAU Country Insurance Company
is an Equal Opportunity Provider

RE:            Crop Hail Policy MT-389-1033158-17
County/Crop:   Petroleum County, Montana - Wheat

Mr. Nunn:

You submitted a crop hail application on July 10, 2017. You were issued the attached Coverage of Insurance that informed you where you could access your policy provisions on the company website where the document was available to you at all times. A complete copy of the crop hail insurance contract is attached.

We received your Notice of Loss dated August 8, 2017, for a hail event on July 16, 2017, on the above-referenced policy while we were working on your tenant's hail claim. Upon receiving your tenant's notice of potential loss, our claim staff contacted him on July 21, 2017, to arrange an appointment at which time he stated there was a fire in the area. He requested permission to keep combining due to the fire and we granted consent to leave unharvested sample strips to be used for the hail adjustment once harvest was complete.

Applicable portions of the General Provisions state:

   Section 3a – Your Duties:

      (2) Your Duties: Continue to care for each damaged field of insured crop until we have examined the field; provided, however, that with our written consent, you may preserve representative samples in each damaged field of insured crop.

      (3): Your Duties: you are to allow us to examine the damaged crop as often as we reasonably require.

      (4): Upon our request, provide a complete harvesting and marketing record of each insured crop.

      (5): Upon our request, submit to an examination under oath.

      (6): Sign a Withdrawal of Claim when our inspection of the crop determines that there is no payable loss under the terms of this policy.

   Section 4a: The amount payable per acre will be the limit of insurance applying on the date of the loss multiplied by the percentage of loss. However, the amount


EXHIBIT 5

Randy Nunn
September 25, 2017
Page Two

>payable may not exceed the actual cash value as determined at the time of the application of the portion of the crop destroyed by perils insured against.
>
>Section 14 outlines various exclusions to coverage, including loss caused by a peril not insured against.
>
>Section 16 provides that you cannot bring suit against us unless you have complied with all of the policy provisions.

We did grant consent to leave representative sample strips, however, by the time we were allowed access to the fields, the fields up north had already been plowed/worked not allowing our adjusters to visually inspect these fields as a whole. They observed during the field inspection that the remaining strips suffered from excessive wildlife damage. According to Section 1 of the Crop Hail Special Provisions for Montana, wildlife damage is not a covered peril.

On the attached Application and Coverage of Insurance you will see that you reported .333% interest in all acres reported for insurance and requested insurance coverage of $166.00 per acre subject to the terms of the insurance contract. We also discovered that of the 440.9 acres reported as wheat only 310.9 acres was actually planted to wheat and the remaining 130.0 acres was planted to corn and safflower. The acres are also being adjusted on both wheat hail policies to 310.9 acres

The amount payable per acre IS the limit of insurance applying on the date of the loss multiplied by the percentage of loss; however, the amount payable may not exceed the actual cash value as determined at the time of the application of the portion of the crop destroyed by perils insured against. We have considered the actual value of the insured crop and contracted the local elevator you do business with to obtain the wheat price as of the date of your application for coverage. Per our field appraisals, the local market price at time of application, and visual field inspections, we have concluded the total liability per acre must be reduced from $400.00 per acre to the following amounts:

    Line 1:        $37.00 per acre        (310.9 acres of CC Spring Wheat)

Weather data we obtained shows three separate hail storms in the area. The first was on July 10, 2017, the second on July 16, 2017, and the third was on August 1, 2017. The attached hail storm images show the track and severity of the hail storm and you can see the location of the farming operation outlined in white. The image from July 10, 2017, shows no hail over the farming operation, the image from July 16, 2017, shows a hail storm occurred in the area on the date reported by you on the notice of potential loss but the hail track did not go over any portion of the farming operation. The image from August 1, 2017 shows no hail over the farming operation.

Randy Nunn
September 25, 2017
Page Three

The weather data from neighboring fields which are also insured by NAU shows the same hail storms in the area on July 16, 2017 and August 1, 2017. Those neighboring fields did not have a notice of loss turned in for the July 16th storm. A notice of loss was turned in for the August 1st storm.

The attached satellite imagery of the farming operation shows the progression of harvest of the wheat acreage. The images for the acreage show that harvest commenced on July 13, 2017, and ended on August 3, 2017. We refer you back to the hail storm images that show that there was hail in the area, but the actual track of the July 16, 2017, storm missed the acreage blocks. The August 1, 2017, storm image shows the hail storm in the area and that the track of that storm missed the acreage.

The evidence we have at this time along with the information we compiled from your field representative sample strips, suggests that your crop was not damaged by hail. This letter serves as notification to you that based on our investigation into the timeline of events, the satellite imagery and weather data, and the evidence in the field inspections we conducted we are denying any indemnification to the Petroleum County wheat acreage under the above 2017 Crop Hail policy and there is no payable loss.

The reasons for denial are based upon what is known to us at this time. We reserve the right to adjust any findings based upon any additional information that we discover or that you provide.

Sincerely,

NAU Country Insurance Company

By:   Anthony Schmode
      VP Regional Claims - Crop

Enclosures

cc:   Mark Masters – Branch Manager
      Reisig Agency – Lewistown
      file