FILED
12/30/2019
Clerk, U.S. District Court
District of Montana
Helena Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ZIMMERMAN AG & CATTLE COMPANY, LLC, and RANDY NUNN,<br><br>Plaintiffs,<br><br>vs.<br><br>NAU COUNTRY INSURANCE COMPANY,<br><br>Defendants. | CV-18-5-BLG-TJC<br><br>**ORDER** |

Plaintiffs Zimmerman Ag ("Zimmerman") and Randy Nunn ("Nunn") filed this action against Defendant NAU Country Insurance Company ("NAU") arising out of NAU's denial of coverage for crop hail damage. (Doc. 7.) Plaintiffs assert claims for breach of contract, declaratory relief, and violation of Montana's Unfair Trade Practices Act. (*Id.* at 7-8.)

Presently before the Court is Plaintiffs' Motion for Partial Summary Judgment. (Doc. 31.) NAU filed a response and Plaintiffs in turned filed a reply. (Docs. 35 & 39.) After considering the parties' submissions, Plaintiffs' motion is DENIED.

//

//

1

**I.    FACTUAL BACKGROUND**[1]

Zimmerman and Nunn each purchased crop hail insurance policies from NAU on July 10, 2017, insuring wheat that Zimmerman farmed on parcels belonging to Zimmerman and Nunn.  NAU issued individual "Schedules of Insurance" to Zimmerman and Nunn, reflecting such information as the insured's name and address, policy effective date, crops covered, and locations of the crops. Zimmerman's schedule itemized four separate wheat crops of varying acreages; each designated the number of acres, the insurance per acre ($400), and a corresponding insurance limit, consisting of the number of acres multiplied by the insurance per acre.  From each amount a rate was assigned to determine the cost of the premium for that crop.  Nunn's schedule only featured one itemized wheat crop, which set forth the number of acres, the insurance per acre ($166) and the corresponding insurance limit.  The Schedules of Insurance also conspicuously directed the insured to "Access Your Hail Provisions online" and provided a URL address to do so.

Crop hail insurance policies can generally be bound on two hours' notice, and before any premium is actually paid.  In this case, for example, premiums were not due on the Plaintiffs' hail insurance until October 1, 2017.  NAU did not send

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motion for partial summary judgment, are taken from the parties' submissions, and are undisputed unless otherwise indicated.

agents or employees to assess the value of the Plaintiffs' wheat crop at the time the policy was issued, nor was the value discussed with NAU at the time of application for coverage. Zimmerman and Nunn simply provided NAU's agent with the amount of insurance they desired. Zimmer explained that he arrived at the value of $400 per acre because "I just bought max coverage. I bought what I could for it."

After the policies were issued, Plaintiffs contend that their crops were damaged by hail, and they submitted a Notice of Loss to NAU on July 19, 2017. NAU subsequently notified Plaintiffs it was denying coverage on September 25, 2017. In addition to reasons for the denial, the notification letter also advised Zimmerman and Nunn of several adjustments to their policies, including adjustments to the actual acreage planted.[2] Paramount to the instant motion, however, is NAU's downward adjustment of the amount of insurance payable per acre. NAU explained in its letter that the amount payable was adjusted to reflect the actual cash value of the insured crop. This resulted in downward adjustment of the amount of insurance on Zimmerman's four parcels from $400 per acre to $175, $74, $209, and $175 per acre. The insurance per acre was also reduced on Nunn's parcel from $166 per acre to $37 per acre.[3] NAU stated that its determination of

---

[2] Zimmerman and Nunn received different letters, but comparison shows them to be largely verbatim with the exception of acre-specific discussion.

[3] The premiums were also reduced to correspond to the reduction in insurance limits.

the actual cash value of the damaged crop was based on "our field appraisals, the local market price at the time of application, and visual field inspections." (Doc. 7 at 13, 18.) This adjustment is the underlying issue in the present motion.

## II. APPLICABLE LAW

### A. Standard of Review

A court will grant summary judgment if the movant can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden to submit evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*. If the movant meets its initial responsibility, the burden shifts to the nonmoving party to establish a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B. Montana Insurance Law

The Court's jurisdiction over this action is based on diversity of citizenship. Therefore, the Court must apply the substantive law of Montana. *In re Cty. of Orange*, 784 F.3d 520, 523-24 (9th Cir. 2015). In Montana, the interpretation of

an insurance contract is a question of law.  *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 319 P.3d 1260, 1264 (Mont. 2014).  A court interpreting an insurance policy is to read the policy as a whole and, to the extent possible, reconcile the policy's various parts to give each meaning and effect.  *O'Connell v. Liberty Mut. Fire Ins. Co.*, 43 F.Supp.3d 1093, 1096 (D. Mont. 2014) (*citing Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021 (Mont. 2008)).  The terms and words used in an insurance policy are to be given their usual meaning and construed using common sense.  *Hardy v. Progressive Specialty Ins. Co.*, 112, 67 P.3d 892, 896 (Mont. 2003).  Any ambiguities in the insurance contract are construed against the insurer and in favor of extending coverage.  *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 929 (Mont. 2009).  "An ambiguity exists when the policy, taken as a whole, is reasonably susceptible to two different interpretations."  *Heggem v. Capitol Indem. Corp.*, 154 P.3d 1189, 1193 (Mont. 2007).  But a court should not "seize upon certain and definite covenants expressed in plain English with violent hands and distort them so as to include a risk clearly excluded by the insurance contract."  *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 474 (Mont. 2005).  Moreover, "a court may not create an ambiguity where none exists, nor may a court rewrite an insurance policy by ignoring clear and unambiguous language to accomplish a 'good purpose.'"  *Heggem*, 154 P.3d at 1193.

## III. DISCUSSION

At issue is whether the policies that Zimmerman and Nunn purchased from NAU are "valued" or "open policies." A valued policy is "one in which the parties agree on the value of the subject matter of insurance." *Billmayer v. Farmers Union Property and Cas. Co,* 404 P.2d 322, 324 (Mont. 1965) (citing 44 C.J.S. Insurance § 48). A valued policy must clearly indicate the insurer's intention to value the risk and loss, in whatever words expressed. *Am. Ins. Co. v. Gentile Bros. Co.*, 109 F.2d 732, 735 (5th Cir. 1940). Valued policies are governed under Montana law by Mont. Code Ann. § 33-24-103, which provides:

> 1) This section applies to policies, except motor vehicle insurance policies, that insure specific listed items of personal property against any loss or damage.
>
> (2) If the insurer places specific valuations upon particular items of covered property and bases the premium charge on these valuations, then the insurer shall compute any total loss or total damage to the property, when covered, at the stated valuation with no deductions or offsets except for the selected deductible in the policy.

Conversely, "[a]n open or unvalued policy is one in which the value of the subject matter is not fixed by the policy, one in which the amount of liability is left open to be determined according to the actual loss, either by agreement of the parties or on proof in compliance with its terms or with the rules of evidence." *Billmayer,* 404 P.2d at 324.

Plaintiffs argue their hail policies are valued. That is, that the loss under the policy is determined solely by the stated limit of insurance, reduced only by the percentage of loss. (Doc. 33 at 5.) In support of their interpretation, Plaintiffs emphasize certain language in multiple policy provisions which only address adjustments for percentage of loss, and they argue there are no similar provisions for adjustment based on the cash or market value of the insured crop. (Doc. 33 at 8-11.) Plaintiffs assert that Mont. Code Ann. § 33-24-103 also favors finding the policies to be valued, because NAU fixed per acre valuations and charged premiums based on those values. (*Id.* at 19-20.) Lastly, Plaintiffs argue that the Montana Supreme Court in *Billmayer v. Farmers Union*, *supra*, interpreted a functionally identical policy to be a valued policy. (*Id.* at 20-22.)

NAU, on the other hand, points to the plain language of two provisions to negate Plaintiffs' interpretation of the policies. First, NAU emphasizes the "Loss Payment" provision in Section 4. of the policies, which provides that the amount payable under the policy will not exceed the actual cash value of the damaged crop. NAU argues that the amount payable was therefore left open for determination and was dependent on the crops' actual cash value. (*Id.* at 15.) Second, NAU emphasizes Section 8. Variation in Acreage in Case of Loss, in which sub-section (b) reads: "The total insurance per acre on your insured interest will not exceed the value of the crop at the time of loss." (*Id.* at 16.) NAU points

7

out that there was a variation in acreage in this case, and therefore this provision also effectively reduced the amount payable to the value of the crop at the time of loss. (*Id.* at 16-17.) NAU further argues that Mont. Code Ann. § 33-24-103 does not apply, because it did not place the value on the crop, Plaintiffs did. (*Id.* at 17-18.) Lastly, NAU asserts that the Montana Supreme Court's decision in *Billmayer* is inapposite and based on different policy language. (*Id.* at 24.) The Court agrees with NAU's interpretation of the policies.

The plain language of Plaintiffs' policies with NAU favors a finding that these are open policies. Central to this conclusion is the Loss Payment provision of the policies, which provide in full:

> The amount payable per acre will be the limit of insurance applying on the date of the loss multiplied by the percentage of loss. *However, the amount payable may not exceed the actual cash value* as determined at the time of the application of the portion of the crop destroyed by perils insured against. We reserve the right to deduct all premiums payable to the company from any loss. (Emphasis added.) (Doc. 33-1 at 4.)

The Ninth Circuit interpreted comparable language of limitation in *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., v. California Cotton Credit Corp.*, 76 F.2d 279 (9th Cir. 1935). In that case, the court considered a cotton crop insurance policy with similar "may not exceed" language to determine whether the policy was valued or open. The circuit court wrote:

> The term 'not exceeding' is of frequent use, and, in the absence of qualification, is usually, if not always, one of limitation only. These words, when found in an insurance policy as a part of the statement of

8

the amount of insurance, necessarily mean that the liability of the insurer shall not be more, but may be less, than the amount stated. In other words, the term 'not exceeding' in a policy of insurance denotes that uncertainty of amount which is the chief characteristic distinguishing an open from a valued policy.

*Nat'l Union Fire Ins. Co.*, 76 F.2d at 287. Thus, the court found that the insurance limits in the policies did not "fix a value upon the crops insured, but merely provide that the liability of the insurer shall not exceed the amount set out in the application." *Id.*

The same is true here. Under a plain reading of Loss Payment provision, the amount payable under the policy will be the limit of insurance multiplied by the percentage of loss, except when that amount would exceed the actual cash value of the crop destroyed. In that event, the amount payable will be the actual cash value of the lost crop. Under Plaintiffs' interpretation of the policy, only the first sentence of the loss payment provision would be operational; the express limitations in the second sentence would be completely ineffective.

In addition, Plaintiffs reliance on the Schedule of Insurance to establish the amount payable under the policy is misplaced. The Schedule of Insurance sets out the insurance limits for any loss covered by the policies, but the amount to be paid for any particular loss is controlled by the Loss Payment clause. As stated in Steven Plitt et al, *Couch on Insurance* § 175:98 (3d ed. 2018) "[a]n amount stated in the policy as the amount of insurance or the maximum amount of recovery does

not, in itself, constitute or make the policy a valued policy so as to entitle the insured to recover the specified amount in case of actual or constructive total loss." Rather, a policy extending coverage to an amount not exceeding a stated sum only provides a limitation upon what might be recoverable under the policy. *Id.*

Plaintiffs also ignore the "Variation in Acreage in Case of Loss" provision, which states:

> 8. **VARIATION IN ACREAGE IN CASE OF LOSS.**
> When the actual acreage of a crop differs from the number of acres stated by item in the Schedule of Insurance:
>
> a. A revised Schedule of Insurance per acre will be obtained by dividing the limit of insurance by the actual acreage at the location for such item.
>
> b. The total insurance per acre on your insured interest will not exceed the value of the crop at the time of loss.

Consequently, this section provides that future adjustments may be made to the number of acres stated on the Schedule of Insurance to reflect the actual acreage of crop. If such an adjustment is made – as it was in this case – the provision also makes clear that the revised insurance per acre will not exceed the value of the crop at the time of loss. This provision is therefore consistent with the Loss Payment clause by limiting the amount payable per acre to the actual value of the crop. The provision also further supports the conclusion that the Plaintiffs' policies were open, and contemplate that adjustments may be made to the insurance limits at the time of loss.

Plaintiffs' contention that Mont. Code Ann. § 33-24-103 favors finding the Plaintiffs' policies as valued is also unavailing. That section is applicable where "the *insurer* places specific valuations upon particular items of covered property." (Emphasis added.) Here, the insured placed the per acre value on the crop, not the insurer. NAU did not have any discussion with Plaintiffs as to the value of their crop, and NAU did not otherwise participate in any valuation prior to the report of loss. In short, NAU did not fix the per acre valuation at $400, Plaintiffs did; NAU fixed the limit of insurance at $400, as specified by Plaintiffs.

Lastly, Plaintiffs reliance on *Billmayer* does not defeat the plain language of Zimmerman and Nunn's policies. (Doc. 33 at 20-22.) In *Billmayer,* as in this case, the sole issue before the court was whether crop hail insurance policies were open policies or valued policies. Each of the policies had identical provisions for the "determination of the amount payable" and the "limit of the amount payable," which provided:

> *Determination of amount payable.* Unless otherwise provided, the maximum amount payable per acre hereunder because of loss occasioned by perils insured against, shall be in the same proportion to the amount of insurance applying per acre at date of loss of the ascertained percentage of physical destruction to the crop per acre by such peril is to the whole of the crop on such acre.
>
> *Limit of amount payable.* If the actual loss sustained by the insured is less than the amount payable as determined in the provision 'Determination of amount payable,' *then the amount payable shall be the actual loss sustained by the insured*. In no event shall the amount payable per acre exceed the

11

amount of insurance applying to the particular acre of crop so damaged or destroyed. (Emphasis in original.)

*Billmayer*, 404 P.2d at 323.

The defendant-insurer argued that the "limit of amount payable" clause applied "where the amount of insurance exceed the actual cash value of the crops damaged." *Id.* 323-324. In that event, it was argued, the amount payable should be limited to the actual loss sustained by the insured. *Id.*

The Montana Supreme Court disagreed. The court first observed that "[t]he reference to 'Determination of amount payable' refers to loss occasioned by perils insured against. . . . Thus, a reasonable interpretation of the words 'actual loss' as used in the limitation paragraph is 'actual loss due to hail' as distinguished from 'actual cash value.'" *Id.* at 325. The court then surveyed several decisions from other jurisdictions, and ultimately adopted the reasoning of the Texas Courts of Appeals in *Twin City Fire Ins. Co. v. Grindsraff,* 404 P.2d 322, 326 (Tex.Civ.App. 1941). There, the Texas court considered a similar crop insurance policy which provided "'in substance, that in the event the insured crop is damaged by hail the amount payable under the policy shall in no event exceed the actual loss or damage sustained by hail'." The court determined that this provision pertained to the "percentage of injury to the crop, and not the value of the crop."

That is plainly not the case here. The actual loss provisions in the Zimmerman and Nunn policies cannot be construed to refer to the extent of injury

to the crop, and not the actual cash value. Unlike *Billmayer* and *Grindsraff*, the loss payable limitation here explicitly refers to the "actual cash value . . . of the crop destroyed."

Therefore, the Court finds that Zimmerman and Nunn's policies are not valued policies. Plaintiffs motion for summary judgment will be denied, accordingly.

**IV. ORDER**

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs motion for summary judgment is DENIED.

DATED this 30th day of December, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge